O

United States District Court
Central District of California

| UNITED AERONAUTICAL CORPORATION et al., | Case № 2:20-CV-01985-ODW (JDEx) |
| Plaintiffs, | |
| v. | **ORDER GRANTING MOTION TO DISMISS [24]** |
| UNITED STATES AIR FORCE et al., | |
| Defendants. | |

## I.  INTRODUCTION

This action arises from a dispute involving proprietary intellectual property between United Aeronautical Corporation ("United") and Blue Aerospace, LLC ("Blue Aero") (collectively, "Plaintiffs"), and the United States Air Force and the United States Air National Guard (the "ANG") (collectively, "Defendants"). Defendants move to dismiss Plaintiffs' First Amended Complaint ("FAC") for lack of subject matter jurisdiction. (Mot. to Dismiss ("Motion" or "Mot."), ECF No. 24.) For the reasons below, the Court **GRANTS** the Motion.[1]

---

[1] Having carefully considered the papers filed in connection with the Motion, the Court deemed the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

## II. BACKGROUND[2]

The Mobile Airborne Fire Fighting System ("MAFFS") is a mobile fire-retardant tank system designed for use in aerial firefighting. (FAC ¶¶ 3, 24, ECF No. 21.) From about 1980–2000, a company called Aero Union developed designs, concepts, and specifications for firefighting products and, in April 2000, contracted with the United States Forest Service to design, develop, and fabricate a new MAFFS prototype, the "MAFFS II" (the "2000 Contract"). (FAC ¶ 29.) According to the 2000 Contract, Aero Union owned the intellectual property developed thereunder subject to the Forest Service's use rights derived from the contract. (FAC ¶ 30.) Aero Union's pre-2000 MAFFS designs and data were "ultimately . . . incorporated into the MAFFS II." (FAC ¶¶ 3, 27.) Plaintiffs identify this data as the "Pre-MAFFS II Proprietary Data." (FAC ¶ 27.)

After Aero Union ceased operations in 2012, United purchased its MAFFS intellectual property through a foreclosure sale. (FAC ¶ 31.) To support ongoing MAFFS II operations, in 2014, United delivered a hard drive containing the MAFFS II data to the Forest Service. (*See* FAC ¶¶ 32–33.) United and the Forest Service executed a Data Rights Agreement ("DRA") concerning the data on the hard drive, in which they acknowledged and agreed,

> [A]s set forth in [the 2000 Contract], the technical data produced or specifically used or related to the [MAFFS II] developed pursuant to such contract shall remain the property of [United] (as the purchaser of assets of Aero [Union] . . .) and [the Forest Service] shall have unlimited rights to view and use the data required for the continued operation and maintenance of the [MAFFS II] product.

(FAC Ex. 1 ("DRA") ¶ 5, ECF No. 21-1.) The ANG received the hard drive from the Forest Service and began developing an upgrade to replace the MAFFS II, called the "iMAFFS." (FAC ¶¶ 6, 35–36.) When Plaintiffs learned the United States

---

[2] The Court addressed the facts of this case extensively in its prior order and incorporates that discussion by reference here. (*See* Order Granting Mot. Dismiss ("Order") 2–4, ECF No. 20.)

Government was marketing iMAFFS internationally, they objected and argued that marketing the derivative iMAFFS would unlawfully disclose Plaintiffs' Pre-MAFFS II Proprietary Data. (FAC ¶¶ 44, 47.) Defendants disagreed. (FAC ¶¶ 39–42, 48, 55.) Defendants found the Government "had unlimited use rights in the data, which included the rights to use the data to develop the iMAFFS system for sale to the international market." (FAC ¶ 55.)

Accordingly, Plaintiffs initiated this action against Defendants asserting violations of the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq.*, and seeking declaratory and injunctive relief. (*See generally* Compl., ECF No. 1; FAC ¶¶ 8–9.) Plaintiffs contend Defendants' use and disclosure of the Pre-MAFFS II Proprietary Data constitutes unlawful agency action in violation of the Trade Secrets Act and federal procurement law. (*See* FAC ¶¶ 8–9.) Plaintiffs seek a determination that Defendants have no ownership rights in, and may not use or disclose, the Pre-MAFFS II Proprietary Data to develop or market the iMAFFS. (FAC ¶¶ 68–69.)

The Court granted Defendants' first motion to dismiss for lack of subject matter jurisdiction because Plaintiffs' initial Complaint sought a determination of rights related to a government contract, i.e., the 2000 Contract and DRA, and therefore were subject to the exclusive jurisdiction of the Court of Federal Claims. (*See* Order 13.) Plaintiffs amended their Complaint and Defendants move again to dismiss Plaintiffs' claims on the same jurisdictional grounds.

### III.    LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(1), a party may move to dismiss a case for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). "Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). "They possess only that power authorized by Constitution or a statute, which is not to be expanded by judicial decree." *Id.* (internal citations omitted). "It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the

party asserting jurisdiction." *Id.* (internal citations omitted). Once a party has moved to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the plaintiff bears the burden of demonstrating that the court has jurisdiction. *Id.*

Where the United States is a defendant, a mere showing of federal jurisdiction does not suffice because "the United States, as sovereign, is immune from suit save as it consents to be sued." *Lehman v. Nakshian*, 453 U.S. 156, 160 (1981) (internal quotation marks omitted); *Gabriel v. Gen. Servs. Admin.*, 547 F. App'x 829, 830 (9th Cir. 2013) ("The United States is immune from suit unless it has expressly waived its sovereign immunity by consenting to be sued; the existence of such consent is a prerequisite for jurisdiction." (internal quotation marks omitted)). Absent a waiver of sovereign immunity, courts have no subject matter jurisdiction over cases against the government. *United States v. Mitchell*, 463 U.S. 206, 212 (1983). The party suing the United States bears the burden to identify an unequivocal waiver of immunity. *Holloman v. Watt*, 708 F.2d 1399, 1401 (9th Cir. 1983).

## IV.     DISCUSSION

Defendants again move to dismiss for lack of subject matter jurisdiction on the ground that Plaintiffs' claims arise from a government contract over which the Contract Disputes Act ("CDA") vests exclusive jurisdiction in the Court of Federal Claims. (Mot. 1, 6–10.) Plaintiffs again respond that their claims are not contract disputes, but rather concern Defendants' unlawful use and disclosure of Plaintiffs' proprietary data. (Opp'n 1–2, 8–17, ECF No. 25.) Plaintiffs contend their claims are cognizable under the APA and, accordingly, the APA's waiver of sovereign immunity together with 28 U.S.C. § 1331's grant of federal jurisdiction provide this Court with subject matter jurisdiction. (*Id.* at 8–10.)

The APA provides a limited waiver of sovereign immunity for claims against the government seeking review of agency action. 5 U.S.C. §§ 701–06; *Chrysler Corp. v. Brown*, 441 U.S. 281, 317–18 (1979). This waiver applies "only if three conditions are met: (1) [the plaintiff's] claims are not for money damages, (2) an adequate

remedy for [the] claims is not available elsewhere[,] and (3) [the plaintiff's] claims do not seek relief expressly or impliedly forbidden by another statute." *Tucson Airport Auth. v. Gen. Dynamics Corp.*, 136 F.3d 641, 645 (9th Cir. 1998); *Suburban Mortg. Assocs., Inc. v. HUD*, 480 F.3d 1116, 1122 (Fed. Cir. 2007). "The application of any one [of § 702's limitations] is enough to deny a district court jurisdiction under the APA." *Suburban*, 480 F.3d at 1126; *see Tucson*, 136 F.3d at 647 (finding the district court lacked federal jurisdiction where only one of the three limitations applied).

Relevant to the third limitation, the Ninth Circuit has repeatedly held that "[t]he Tucker Act, 28 U.S.C. § 1491, impliedly forbids declaratory and injunctive relief and precludes the APA § 702 waiver of sovereign immunity for any claim founded upon an express or implied contract with the United States." *Cooper v. Haase*, 750 F. App'x 600, 601 (9th Cir. 2019) (brackets and internal quotation marks omitted); *see, e.g., Tucson*, 136 F.3d at 645–46. This is because the Tucker Act, which permits only money damages, grants the Court of Federal Claims jurisdiction and expressly divests district courts of jurisdiction over any claim against the United States that is related to a government contract. 28 U.S.C. § 1491(a)(1); *Raytheon Co. v. United States*, 146 Fed. Cl. 469, 474 (2020).

A claim relates to a government contract, for purposes of establishing subject-matter jurisdiction under the Tucker Act provision granting the Court of Federal Claims jurisdiction over claims arising under the Contract Disputes Act ("CDA"), "if it has 'some relationship to the terms or performance of a government contract.'" *Raytheon*, 146 Fed. Cl. at 474 (quoting *Todd Const., L.P. v. United States*, 656 F.3d 1306, 1312 (Fed. Cir. 2011)). To be covered by the CDA, a claim "need not be based on the contract itself . . . as long as it relates to . . . the contract." *Id.* (quoting *Todd Const.*, 656 F.3d at 1314 (explaining that "related to" should be read broadly under the CDA)). To determine whether a claim is "founded upon a contract for the purposes of the Tucker Act," courts consider "the source of the rights upon which the plaintiff bases its claims, and . . . the type of relief sought (or appropriate)." *Gabriel*,

547 F. App'x at 831. A claim is considered contractually based where the plaintiff seeks a determination of contract rights. *See Tucson*, 136 F.3d at 647 (finding claim contractually based where the plaintiff was "asking the district court to decide what its contract rights [were]").

The Court previously found it lacked jurisdiction over Plaintiffs' claims because "Plaintiffs seek a determination of rights under the [2000 Contract and the DRA]" and their claims for declaratory and injunctive relief therefore "relate to and are concerned solely with the rights articulated in" those government contracts. (Order 10.) Plaintiffs amended their initial Complaint to expand on Aero Union's development of the disputed intellectual property before it entered the 2000 Contract. (FAC ¶¶ 27–29.) Plaintiffs argue Aero Union developed the Pre-MAFFS II Proprietary Data "independently" and so the relief Plaintiffs seek here—a declaration that Defendants have no right to use the Pre-MAFFS II Proprietary Data to develop and market iMAFFS—does not "relate to" the contracts. (*See* Opp'n 9–16.)

Plaintiffs' allegations again belie their assertions. Plaintiffs allege Aero Union developed the Pre-MAFFS II Proprietary Data in the years before it contracted with the Forest Service to develop a MAFFS II prototype. (FAC ¶ 27.) Plaintiffs also allege that all Pre-MAFFS II Proprietary Data was "incorporated into the MAFFS II," and "subject to the [Forest Service's] use rights derived from the [2000 Contract]." (FAC ¶¶ 27, 29, 34.) The Court previously determined that Defendants' right to use the hard drive and MAFFS II data derives from the DRA and 2000 Contract. (Order 10.) Therefore, as the Pre-MAFFS II Proprietary Data was "incorporated into the MAFFS II" and "subject to the . . . use rights derived from the contract," Plaintiffs' request for a finding defining Defendants right to use the Pre-MAFFS II Proprietary Data still requires the Court to determine Defendants' rights under the contracts. (*See* Order 10–11.) Consequently, district court jurisdiction is not available. *Tucson*, 136 F.3d at 647.

Although leave to amend is generally warranted, Fed. R. Civ. P. 15(a), Plaintiffs' amended allegations are largely identical to those in the initial Complaint and fail for the same reasons. Plaintiffs do not suggest what further amendment could remedy the lack of jurisdiction, (*see* Opp'n 24), and the Court finds that the allegation of additional facts consistent with the FAC "could not possibly cure the deficiency," *see Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986). Therefore, amendment would be futile and the Court **DENIES** leave to amend. *See Carrico v. City & Cnty. of San Francisco*, 656 F.3d 1002, 1008 (9th Cir. 2011).

While this result may be less than satisfying, the Ninth Circuit has made clear that "the concept of make-whole relief inherent in much of the common-law tradition does not apply in the context of actions brought against the United States." *Tucson*, 136 F.3d at 644. "[T]hat a plaintiff against the United States may receive less than complete relief in the federal courts should not necessarily be viewed as an inappropriate result . . . ." *Id.* at 647.

## CONCLUSION

For the reasons discussed above, the Court **GRANTS** Defendants' Motion and **DISMISSES** Plaintiffs' FAC **without leave to amend**. (ECF No. 24.) Judgment will issue.

**IT IS SO ORDERED.**

October 25, 2021

_____
 OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE